QUESTIONS: 1. Does s. 238.09, F.S., provide the administrator of the retirement system for school teachers parameters for s.238.07, F.S., relative to the magnitude of a retiree's annuity portion of his benefit? 2. Does the fact that the administrators of the retirement system have not conformed to s. 238.09, F.S., coupled with the mandatory nature of payroll deductions for employee contributions and periodic legislative changes to the statutes in question, indicate an obligation on behalf of the state to the past or present participants of Plan D? 3. Does there exist sufficient administration authority under current retirement law to effect change in the historic interpretation, and thus calculation, of benefits under Plan D?
SUMMARY: Section 238.09, F.S., provides the parameters for s.238.07, F.S., relative to the magnitude of a retiree's annuity under Plan D, the Teachers' Retirement System. The state, however, has no legal obligation to the past and/or present members of Plan D. Since s. 238.09 provides the method by which the magnitude of a member's retirement benefit is calculated, the statute must be followed when determining the deductions required pursuant thereto. AS TO QUESTION 1: At the onset, it should be noted that Plan D was established within the Teachers' Retirement System in 1947, and closed for new members in 1953. The retirement benefits consist of an annuity which is the actuarial equivalent of the accumulated retirement contributions of the member plus a pension paid by the state based on the years of service and the average final compensation of the member plus an additional pension based upon service rendered prior to 1939 when the Teachers' Retirement System was established. The law which established Plan D, s.238.07(6)(a), (b), (c), F.S., was designed to provide an aggregate retirement benefit equivalent to 2 percent of the average final compensation (hereafter A.F.C.) times the years of creditable service (hereafter Y.C.S.); but only 1 percent in the form of a pension is to be paid from the state's contributions. See s. 238.07(6)(b). The annuity portion of such retirement benefit is defined at s. 238.07(6)(a), as simply the actuarial equivalent of accumulated contributions at the time of retirement. However, s. 238.09, supra, which relates to the method of financing of the retirement system requires the actuary of the Division of Personnel and Retirement (hereafter division) to establish and maintain the member's annuity contributions in an annuity savings trust fund which shall be computed to provide at retirement "an annuity equal to one one-hundredth of the member's average final compensation multiplied by the number of years of membership service." See 238.09(1)(a)3. The annuity contributions are required to be certified by the division to each employer who . . . shall cause to be deducted from the salary of each member on each and every payroll for each and every payroll period an amount equal to the proportion of the member's earnable compensation so computed. Section 238.09(1)(c). Prior to governmental reorganization, the annuity savings trust fund was administered by and was the responsibility of a board of trustees which was composed of the State Board of Education and two teacher members. This function was transferred to the Division of Personnel and Retirement in 1969. See s. 20.31(5)(b), F.S. From the language of s. 238.09(1)(a), supra, it is apparent that the legislature intended that the Division of Personnel and Retirement of the Teachers' Retirement System and its predecessor, the board of trustees, be charged with the statutory duty of certifying the proper amounts to be deducted by the employer so that, at the time of retirement under Plan D, the annuity savings trust fund produced an annuity for each member equal one one-hundredth of the average final compensation multiplied by the number of years of membership. Thus, while s. 238.07(6)(a), id., states that an annuity (which is the actuarial equivalent of the member's accumulated contributions at the time of retirement) will be paid, s. 238.09 clearly governs the amount of such payment and requires the division to deduct such amounts notwithstanding that the minimum compensation provided for by law for any member shall be reduced thereby. Section 238.09(1)(e). Every teacher who accepts employment is deemed to consent and agree to any deductions from his compensation required by the chapter and to all provisions of the chapter. Section 238.12(1). The division has taken the position that to comply with the provisions of s. 238.09, supra, would have required payroll deductions from teachers' salaries in an amount deemed by the division to be unreasonable. The division also states that the legislature realized the impossibility of calculating the annuity contributions so as to provide a full 1 percent and in response provided that any member who wishes to receive the amount set out in s. 238.09 may make a lump sum contribution to compensate for any deficits that exist in the annuity contributions. See s. 238.09(1)(f). Finally, the division has interpreted the statute in question, s. 238.09, as being permissive rather than mandatory. Regardless of the difficulties inherent in accurately and adequately computing the mandatory employee contributions under Plan D, the inescapable conclusion is that the division was charged by the legislature with the statutory duty pursuant to s. 238.09, supra, of ensuring that, upon retirement, certified deductions were made by the employer so that a member's accumulated contributions under Plan D provided such member with an annuity equal to one percent times A.F.C. times Y.C.S. Section 238.03(4), F.S., requires the division to employ an actuary as the technical advisor of the division. At s.238.03(5), the following is required of the actuary and the division: In the year 1943 and at least once in each five-year period thereafter, the actuary shall make an actuarial investigation of the mortality, service and salary experience of the members and beneficiaries as defined in this chapter, and shall make a valuation of the various funds created by the chapter, and having regard to such investigation and valuation, the division shall adopt such mortality and service tables as shall be deemed necessary, and shall certify the rates of contributions payable under the provisions of this chapter. (Emphasis supplied.) Therefore, it is apparent that the division could have adopted rates of contribution which would have guaranteed the contributing employee the annuity required to be paid under s. 238.09(1)(a)3., supra. As an expert, the actuary would have obviously been aware of changing conditions regarding teachers' salaries, interest rates, and the economy in general which have occurred since 1947 and should have taken such factors into account within each five-year actuarial investigation. The division, in turn, should have used this information to calculate employer contributions which would yield at retirement the amount required by statute. Regardless of the difficulties, the provisions of s. 238.09 should have been complied with. There is no statutory limit on the amount of contributions which may be required of a member by the division, even assuming such contributions reduce the employee's salary below a minimum level required by law. Moreover, the "accumulated contributions" of a member when collected are required to be invested in the annuity savings trust fund and are, thereby, subject to the provisions of s. 238.09. See also s. 238.01(13), id. The division next contends that the legislature enacted s. 238.09(1)(f), supra, in the realization that the requirements of s. 238.09(1)(a)3. could not be complied with. However, s. 238.09(1)(f), which allows a lump sum payment by the employee in order to purchase an additional annuity, in no way authorizes or supports the division's interpretation of this section. Section 238.09(1)(f) relates to withdrawals from the annuity savings trust fund and the purchase of an additional annuity which shall not exceed a total retirement allowance of one-half of the average final compensation at retirement and has nothing whatsoever to do with deficits caused by the insufficient certification of deductions by the division to the employer under Plan D. Further, it is evident that the legislature could not have "realized the difficulties of administering Plan D and enacted s. 238.09(1)(f) in response thereto" since this particular provision appears in almost identical form in the original statute, Ch. 19014, 1939, Laws of Florida, while s. 238.09(1)(a) was not enacted in its present form until July 1, 1955. See Ch. 29942, 1955, Laws of Florida. Finally, the division contends that the applicable provisions of s. 238.09, supra, should be read as being permissive and not mandatory. This interpretation requires that the word "shall" as it appears within s. 238.09 be interpreted as being directory by defining the word shall as used in the statute to mean "may." However, where the language of a statute is clear and unambiguous the construction intended by the legislature is obvious from the language used. As a general rule of statutory construction, the word shall when used in a statute ordinarily is mandatory. Moreover, where authority is granted to public officials to do a thing in a certain way, the manner of doing the thing is mandatory and limitation on the authority of the official. Sutherland, Statutory Construction, s. 57.14. Based on all of the foregoing, I am compelled to hold that s. 238.09, supra, does provide the administrator parameters for s.238.07, supra, relative to the magnitude of a retiree's annuity. AS TO QUESTION 2: As previously discussed in answer to question 1, since the statutory duty owed to members of Plan D was not breached due to any action or fault of the legislature, I am of the view that the state has no legal obligation toward the members of Plan D. The state did not guarantee directly to the members of Plan D a set annuity nor did the state commit or obligate itself by statute to pay any amounts in arrears in the event that the trustees failed to carry out the duties imposed upon them by the legislature. However, while the state has no legal obligation as to the members of Plan D, this is not to say that the state has no equitable responsibility toward those members. The information which I have been furnished indicates rather clearly that the equities involved in this situation weigh heavily on the side of those members of the retirement system who have paid their mandatory contributions of substantial sums without question over the years and who were never individually informed that they were not to receive upon retirement what the applicable statutes appeared to ensure them. There is certainly an equitable responsibility on the part of the state to do whatever is necessary to correct any injustices which may have been caused by this unfortunate situation. In this regard, appropriate remedial legislation is strongly urged so that no innocent individual is subjected in the past or the future to undue hardship because of the circumstances surrounding the history of Plan D. AS TO QUESTION 3: Since s. 238.09, supra, provides the method by which the magnitude of a member's retirement benefit is calculated, the only alternative is to interpret Plan D consistent with the analysis of the applicable statutes contained within the response to question 1.